1
2
3
4
5

Michael S. Lowe (Bar No. 173664)
   michael.lowe@troutman.com
TROUTMAN PEPPER HAMILTON
SANDERS LLP
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA  90071
Telephone: 213.928.9800

6
7
8
9

Callan G. Stein (admitted *pro hac vice*)
   callan.stein@troutman.com
TROUTMAN PEPPER HAMILTON
SANDERS LLP
High Street Tower
125 High Street, 19th Floor
Boston, MA  02110-2736
Telephone: 617.204.5103

10
11

[Defendant's Additional Counsel Listed on
Next Page]

12

Attorneys for Defendant ManPow. LLC

13

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* MATTHEW MILLER, DONALD K. BAKE, AND SAAD KHAN<br><br>Plaintiffs,<br><br>vs.<br><br>MANPOW, LLC,<br><br>Defendant. | Case No.:  2:21-cv-05418-VAP-ADS<br><br>The Honorable Virginia A. Phillips<br><br>**DEFENDANT MANPOW, LLC'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**<br><br>Date:      February 26, 2024<br>Time:     11:00 a.m.<br>Place:    Courtroom 6A |

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

---

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

167247964v9

1    ADDITIONAL COUNSEL:

2    Avrohom C. Einhorn (admitted *pro hac vice*)
         avrohom.einhorn@troutman.com
3    TROUTMAN PEPPER HAMILTON SANDERS LLP
     3000 Two Logan Square
4    Eighteenth and Arch Streets
     Philadelphia, PA 19103-2799
5    Telephone: 215.981.4000

6    Kevin A. Crisp (Bar No. 261023)
         kevin.crisp@haynesboone.com
7    HAYNES BOONE LLP
     600 Anton Boulevard
8    Suite 700
     Costa Mesa, CA 92626
9    Telephone: 949.202.3044

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

**I.**   INTRODUCTION ..................................................................................1

**II.**   BACKGROUND ...................................................................................3

    **A.**   Procedural History ....................................................................3

    **B.**   ManPow's Attorneys' Fees and Expenses Defending Relators' Unfounded FCA Claims ...........................................................5

**III.**   LEGAL ARGUMENT ..........................................................................5

    **A.**   ManPow is the Prevailing Party ...............................................6

    **B.**   The Court's Order on Summary Judgment Confirms Relators' Claims are Clearly Frivolous ...................................................6

        i.   Relators' original complaint contradicted the law and PPP regulations.................................................................6

        ii.   Relators pled zero allegations regarding scienter. ...................12

    **C.**   Relators' Claims were Vexatious and Brought Primarily for the Purposes of Harassment ...................................................12

        i.   The lawsuit was clearly frivolous. ...........................13

        ii.   Relators did not have any direct or independent knowledge of the underlying facts nor were they traditional "insiders." ...............................................13

        iii.   Relators improperly brought this action for personal and business reasons. .......................................................15

        iv.   Relators were aware that the purportedly defrauded agency disagreed with their claims. ..........................................17

    **D.**   ManPow's Requested Attorney's Fees and Expenses are Reasonable .........................................................................18

        i.   The Attorneys' Fees Sought Are Reasonable...........................18

        ii.   Troutman Pepper's Hours Are Reasonable .............................20

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

167247964v9

iii.    ManPow Should Also Recover Its Expenses ...........................20

**IV.    CONCLUSION** ..............................................................21

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

167247964v9

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

CASES

4

5

*Amphastar Pharm. Inc. v. Aventis Pharma SA*,
2017 WL 10543563 (C.D. Cal. Nov. 20, 2017) (J. Garbis) .............................7, 12

6

7

*Amphastar Pharm. Inc. v. Aventis Pharma SA*,
2020 WL 8680070 (C.D. Cal 2020) ...................................................................20

8

*Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*,
548 U.S. 291 (2006) ............................................................................................21

9

10

*U.S. ex rel. Barajas v. Northrop Corp.*,
5 F.3d 407 (9th Cir. 1993) ...................................................................................5

11

12

*Blum v. Stenson*,
465 U.S. 886 (1984) ............................................................................................19

13

14

*Camacho v. Bridgeport Financial, Inc.*,
523 F.3d 973 (9th Cir. 2008) .............................................................................20

15

16

*U.S. ex rel. Campie v. Gilead Sciences, Inc.*,
862 F.3d 890 (9th Cir. 2017) .............................................................................12

17

18

*Carter v. Caleb Brett LLC*,
757 F.3d 866 (9th Cir. 2014) .............................................................................19

19

20

*U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.*,
46 F. Supp. 2d 546 (E.D. La. 1999), *vacated on other grounds*, 244 F.3d 486
(5th Cir. 2001) ....................................................................................................21

21

22

*Gonzalez v. City of Maywood*,
729 F.3d 1196 (9th Cir. 2013) ...........................................................................19

23

24

*Graves v. Plaza Med. Ctrs.*, *Corp.*
2018 WL 3699325, at *12 (S.D. Fla. May 23, 2018)........................................21

25

26

*Hagood v. Sonoma County Water Agency*,
81 F.3d 1465 (9th Cir. 1996) .............................................................................10

27

28

*U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*,
1992 WL 247587 (D.D.C. Sept. 15, 1992) ........................................................17

iv

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

167247964v9

*U.S. ex rel. Hopper v. Anton*,
   91 F.3d 1261 (9th Cir. 1996) .............................................................................. 10

*Hughes v. Rowe*,
   449 U.S. 5 (1980) ................................................................................................. 6

*Hyde v. Midland Credit Mgmt., Inc.*,
   567 F.3d 1137 (9th Cir. 2009) .............................................................................. 5

*U.S. ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes*,
   422 F.Supp.2d 225 (D.D.C. 2006) ..................................................................... 18

*Jacobs v. Lambda Research, Inc.*,
   2014 WL 12654911 (S.D. Ohio June 16, 2014) ................................................ 17

*Kuroiwa v. Lingle*,
   2008 WL 4056137 (D. Haw. Aug. 27, 2008), *aff'd sub nom. Kuroiwa v. United States*, 351 Fed. App'x 238 (9th Cir. 2009) ........................................................ 12

*U.S. ex rel. Lee v. Corinthian Colls.*,
   655 F.3d 984 (9th Cir. 2011) .............................................................................. 10

*U.S. ex rel. Lindenthal v. Gen. Dynamics Corp.*,
   61 F.3d 1402 (9th Cir. 1995) .............................................................................. 21

*McKibben v. McMahon*,
   2019 WL 1109683 (C.D. Cal. Feb. 28, 2019) ................................................... 20

*Mikes v. Straus*,
   274 F.3d 687 (2d Cir. 2001) ..................................................................... 6, 12, 13

*U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*,
   601 F. Supp. 2d 45 (D.D.C. 2009), *vacated in part on other grounds*, 2011 WL 1833243 (D.C. Cir. May 12, 2011) ..................................................................... 21

*U.S. ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La.*,
   1997 WL 119971 (5th Cir. March 13, 1997) ..................................................... 18

*Moore v. Jas. H. Matthews & Co.*,
   682 F.2d 830 (9th Cir. 1982) .............................................................................. 20

*Moreno v. City of Sacramento*,
   534 F. 3d 1106 (9th Cir. 2008) ........................................................................... 20

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

167247964v9

*Perfect 10, Inc. v. Giganews, Inc.*,
    2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) (J. Birotte), *aff'd*, 847 F.3d 657
    (9th Cir. 2017) ................................................................................................ 19, 20

*Pfingston v. Ronan Engineering Co.*,
    284 F.3d 999 (9th Cir. 2002) ..................................................... 5, 6, 12, 13

*Pollinator Stewardship Council v. U.S. Environmental Protection Agency*,
    2017 WL 3096105, *10 (9th Cir. 2017) ............................................................ 20

*Taniguchi v. Kan Pac. Saipan, Ltd.*,
    566 U.S. 560 (2012) ............................................................................................ 21

*Townsend v. Holman Consulting Corp.*,
    929 F.2d 1358 (9th Cir. 1990) ........................................................................... 13

*Tutor-Saliba Corp. v. City of Hailey*,
    452 F.3d 1055 (9th Cir. 2006) ............................................................................. 6

*United States v. ITT Educ. Servs., Inc.*,
    2012 WL 1028794 (S.D. Ind. March 26, 2012), *rev'd on other grounds,* 719
    F.3d 818 (7th Cir. 2013) ..................................................................................... 14

*Van Gerwen v. Guarantee Mut. Life co.*,
    214 F.3d 1041 (9th Cir. 2000) ........................................................................... 19

*U.S. ex rel. Vuyyuru v. Jadhav*,
    555 F.3d 337 (4th Cir. 2009) ............................................................................. 12

*Zenith Ins. Co. v. Breslaw*,
    108 F.3d 205 (9th Cir. 1997), *abrogated on other grounds, AMAE v. California*,
    231 F.3d 572 (9th Cir. 2000) (en banc) .............................................................. 6

STATUTES

15 U.S.C. § 636(a)(36)(A)(viii)(I) ........................................................................ 7, 9

15 U.S.C. § 636(a)(36)(E)(i)(I) ................................................................................ 7

31 U.S.C. § 3730(d)(4) ................................................................................... *passim*

OTHER AUTHORITIES

85 Fed. Reg. 20811, 20813 (April 15, 2020) .......................................................... 8

Fed. R. Civ. P. 12 ............................................................................................ 2, 8, 9

MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES

167247964v9

## I.      **INTRODUCTION**

The purpose of the *qui tam* provision of the False Claims Act ("FCA") is to encourage private citizen whistleblowers to weed out fraud against the government. It is not to be used as a tool to wage personal vendettas against innocent defendants, or as a tactic to support state court litigation. For this reason, Congress included a provision in the FCA providing for prevailing defendants to be awarded attorneys' fees and expenses where the action was either frivolous or brought for an improper purpose. The *qui tam* complaint filed by relators Matthew Miller, Saad Khan, and Donald Bake ("Relators") in this case was both.

Prior to filing their complaint against defendant ManPow, LLC ("ManPow") in this case, more than one year earlier, Relators—three former ManPow employees who quit to form their own competing real estate company—sued ManPow in Los Angeles Superior Court to escape their non-compete clauses.[1] Only after ManPow filed a cross-complaint in that state case did Relators file their *qui tam* complaint.[2] All of the facts Relators alleged in their complaint regarding ManPow's two Paycheck Protection Program ("PPP") loans were matters of public record. Relators had no inside knowledge of fraud. Instead, it appears they (or their attorneys) simply looked up ManPow's PPP loan data through public source information.[3] Relators are not whistleblowers. They are simply disgruntled former employees (and current

---

[1] *Miller, et al. v. United Investexusa 7 Inc., United Investexusa 11 Inc., and ManPow LLC,* No. 20STCV22215 (L.A. Sup. Ct.). The three Relators in this *qui tam* case, as well as five other former ManPow employees, sued in that case for declaratory and injunctive relief to void their non-compete clauses as well as for damages for alleged unfair competition.

[2] References to the "complaint" herein will refer to the initial *qui tam* complaint filed by Relators in this case on July 2, 2021 (Docket #1), unless expressly stated otherwise.

[3] Anyone can look up a company's PPP loans by a quick internet search and find the precise loan details Relators alleged in this case. They did not allege anything about the loans other than what is public record. The only personal knowledge Relators possessed, as set out in their complaint, relates to ManPow's business—not the PPP loans in question.

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

business competitors) who, while in litigation against ManPow, used the FCA to bring a frivolous case to harass ManPow, obtain ManPow's trade secrets and other confidential and proprietary business information in discovery, and increase their leverage in their state lawsuit, all while driving up ManPow's defense costs. Relators publicly bragged about it almost immediately after it was unsealed and continued to post updates on social media publicly disparaging ManPow. Relators' attorneys even gave interviews to the press publicly accusing ManPow of committing PPP fraud.

The improper purpose in bringing this suit is also supported by the fact that the claims alleged were frivolous. As this Court found in granting ManPow's motion for summary judgment, Relators' first (and primary) theory of liability—that ManPow had no actual "payroll expenses"—had no legal basis whatsoever and was directly contradicted by the PPP regulations. *See* Ex. 20, Order at 19 (Dkt. 199). In advancing this claim, Relators avoided using the correct term, "payroll costs"—a term which Congress actually defined and SBA made clear was the primary eligibility criterion. Instead, throughout the complaint, Relators used terms like "actual employment costs" and "substantial employment expenses," and alleged ManPow committed fraud because it had none. But ManPow indisputably had "payroll costs," and if Relators had used the correct term, ManPow's PPP eligibility would have been clear, Relators would have had no basis to bring their complaint, and this Court most likely would have dismissed the complaint at the Rule 12 stage.

In granting summary judgment, this Court also concluded that Relators' second "theory"—that the number of employees ManPow listed on its First Draw PPP application did not support the loan amount—was necessarily immaterial because it could not have had any impact on ManPow's loans since the loan amount was based on average monthly payroll, not number of employees, and ManPow correctly listed its average monthly payroll (while incorrectly listing fewer employees than it had). This Court also concluded that Relators misstated the law by claiming that there was no materiality element of their FCA claim. *See id.* at 29-32.

Simply put, in filing their complaint, Relators (or their attorneys) seem to have merely looked up ManPow's publicly available PPP loan data, regurgitated it, added in background facts about ManPow's business, mischaracterized PPP eligibility criteria by avoiding reference to "payroll costs," ignored the law, and then falsely accused ManPow of defrauding the government. They did so with no insider knowledge of fraud, advancing clearly frivolous claims, while in the middle of a bitter legal dispute in state court with ManPow, hoping to harass ManPow and gain a tactical advantage. These facts, coupled with other facts set forth herein, demonstrate that the complaint was not only frivolous, but it was filed for an improper purpose, and as such, ManPow is entitled to its attorneys' fees and expenses as compensation for the millions of dollars it spent defending this frivolous suit.

## II.    <u>BACKGROUND</u>

### A.    Procedural History

Relators first sued ManPow in Los Angeles Superior Court in June 2020, when—after resigning their positions to start a competing company—they brought an action to invalidate their noncompete agreements. In its cross-complaint against Relators in that case, ManPow explained that Relators "planned a coup," and made off with ManPow's propriety and confidential business information. Ex. 5, ¶2. ManPow alleged that Relators sought not to fairly compete in the marketplace, but rather to get their new venture off the ground with a huge and unwitting head start from their former employer. *Id.* Against this backdrop, Relators filed their *qui tam* complaint on July 2, 2021. Dkt. 1. Notably, the United States investigated the merits of Relators' claims and declined to intervene (Dkt. 15), and the complaint was unsealed on June 16, 2022. Dkt. 16.

ManPow moved to dismiss Relators' complaint on August 12, 2022. Dkt. 22. In denying ManPow's motion, the Court stated that it based its decision solely on Relators' having "sufficiently alleged particular details of a scheme to submit false claims" and that it reserved an examination of "all the PPP statistics, rules,

amendments and guidance documents" for "a later stage in the case." Ex. 6 at 12. Knowing that their allegations would escape further scrutiny until summary judgment, Relators amended their complaint twice—in February 2023 and June 2023—to add further theories of falsity developed solely through discovery.

Throughout the discovery period, Relators fought tooth and nail not only to obtain ManPow's highly sensitive and confidential business information, but to prevent ManPow from designating that information as "Attorneys' Eyes Only" ("AEO") so that Relators could not weaponize the discovery to gain a competitive advantage for their business or use it to help support their state court litigation against ManPow. On May 26, 2023, ManPow applied *ex parte* to amend the Protective Order in this case to add an AEO designation before producing to Relators its *completely unredacted* bank statements, which include transactions utterly unrelated to this case, and hundreds of employment agreements and other contracts with ManPow's employees. *See* Ex. 7. Instead of stipulating, Relators opposed ManPow's efforts. *See* Ex. 24. The Court granted ManPow's application over Relators' objections, holding that Relators did "not adequately show[] that prosecution of their claims will be impaired if the Relators themselves are precluded from seeing" ManPow's confidential business records. Ex. 8 at 6.

As discovery progressed, ManPow disclosed the identities of two potential witnesses—SBA employees Kandace Zelaya and Martin Andrews. *See* Ex. 9, 10. ManPow obtained declarations from these witnesses that stated, *inter alia*, that SBA had reviewed all of the allegations in Relators' second amended complaint—which primarily consisted of those added *after* the Court's denial of ManPow's motion to dismiss—and had still not reconsidered its payment or forgiveness decisions related to ManPow's PPP loans. Ex. 10., ¶¶20-22.

On October 2, 2023, ManPow filed its motion for summary judgment. Relators not only opposed the motion but also filed a motion of their own to exclude the SBA declarations, which the Court denied. Dkt. 197. Oral argument on ManPow's

summary judgment motion was heard on December 5, 2023. On January 3, 2024, the Court granted ManPow's motion and dismissed Relators' complaint with prejudice.

### B.    ManPow's Attorneys' Fees and Expenses Defending Relators' Unfounded FCA Claims

In defending against Relators' groundless allegations, ManPow incurred total attorneys' fees and expenses of $2,558,043.28. Ex. 3-4. However, ManPow has reduced that total by $163,111.90, which represents time dedicated to preparing discovery served to nonparty City National Bank and opposing its motion to quash, and opposing Relators' motion to compel that was granted in part and denied in part (Dkt. 93). Lowe Decl., ¶17. Therefore, ManPow seeks attorneys' fees and expenses in the amount of $2,394,941.38. *Id.*, ¶21.

### III.   LEGAL ARGUMENT

Prevailing defendants in FCA *qui tam* actions are entitled to their reasonable attorneys' fees and expenses where the action "was clearly frivolous, clearly vexatious, or brought primarily for the purposes of harassment." 31 U.S.C. § 3730(d)(4); *see also U.S. ex rel. Barajas v. Northrop Corp.*, 5 F.3d 407, 410 n.9 (9th Cir. 1993). Congress expressly added this attorneys' fee provision "in order to create a strong disincentive and send a clear message to those who might consider using the private enforcement provision of this Act for illegitimate purposes." *Hyde v. Midland Credit Mgmt., Inc.*, 567 F.3d 1137, 1140 (9th Cir. 2009) (*quoting* S. Rep. No. 99-345, at 29, U.S. Code Cong. & Admin. News (1986), at 5294). Accordingly, Congress "encourages courts to strictly apply this provision in frivolous or harassment suits as well as any applicable sanctions available under the Federal Rules of Civil Procedure." *Id.* In accordance with such guidance, the Ninth Circuit has awarded such fees in "rare and special circumstances." *Pfingston v. Ronan Engineering Co.*, 284 F.3d 999, 1006 (9th Cir. 2002).

This case involves the "rare and special circumstances" contemplated in *Pfingston.* This Court's decision on summary judgment confirms Relators' initial

complaint was frivolous. The record also makes clear that Relators brought this FCA case primarily for improper purposes in light of the relationship and ongoing litigation between Relators and ManPow.

### A.    ManPow is the Prevailing Party

There is no doubt that ManPow is a prevailing defendant because the Court dismissed Relators' Second Amended Complaint in its entirety with prejudice. *See Zenith Ins. Co. v. Breslaw*, 108 F.3d 205, 207 (9th Cir. 1997) ("[A] dismissal with prejudice is tantamount to a judgment on the merits."), *abrogated on other grounds, AMAE v. California*, 231 F.3d 572 (9th Cir. 2000) (en banc).

### B.    The Court's Order on Summary Judgment Confirms Relators' Claims are Clearly Frivolous

Pursuant to 31 U.S.C.A. § 3730(d)(4), "an action is 'clearly frivolous' when 'the result is obvious or the [relator]'s arguments of error are wholly without merit.'" *Pfingston*, 284 F.3d at 1006 (*quoting Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994). Such a finding is appropriate where it lacks a factual and legal basis at the outset of the litigation. *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006) (affirming district court's holding that a plaintiff's constitutional claims were frivolous where they "lacked a factual and legal basis").

Fees may be awarded when a relator's claims are "*objectively* frivolous, irrespective of plaintiff's *subjective* intent." *Mikes v. Straus*, 274 F.3d 687, 705 (2d Cir. 2001). This standard is also met if "the plaintiff continued to litigate after" his claim "clearly became" groundless or without foundation. *Hughes v. Rowe*, 449 U.S. 5, 15 (1980).

### i.    *Relators' original complaint contradicted the law and PPP regulations.*

Relators began this litigation by alleging at most just two specific theories. Neither theory, however, came remotely close to satisfying even the most basic elements of a claim under the FCA, and were therefore frivolous. *See Amphastar*

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

*Pharm. Inc. v. Aventis Pharma SA*, 2017 WL 10543563, at *8 (C.D. Cal. Nov. 20, 2017) (J. Garbis) ("Deciding to pursue a lawsuit without a credible foundation from the onset for doing so is clearly frivolous.").

Relators' primary theory was that ManPow committed fraud when "it represented that it has average monthly *employment costs* of over $560,000" because ManPow did not bear the "risk of loss" for its employees' salaries since they were "reimbursed" by the regional real estate offices at which ManPow's employees worked. *See* Ex.11, ¶¶7, 36 (emphasis added). However, as Relators well knew at the time they filed their complaint, and as all PPP applications make clear, ManPow did *not* represent that it had "average monthly *employment costs*" of over $560,000. Instead, ManPow represented to SBA that it had "average monthly *payroll costs*" of over $560,000. This distinction is significant because "payroll costs" is a term *defined by Congress and SBA* to include the payment of employee salaries (and as Relators readily admitted in their complaint, ManPow did pay employee salaries).

The actual law passed by Congress establishing the PPP made crystal clear that for purposes of the PPP, the relevant inquiry was whether the borrower had "payroll costs." *See, e.g.,* 15 U.S.C. § 636(a)(36)(E)(i)(I). Congress defined "payroll costs" as including "the sum of payments of any compensation with respect to employees." 15 U.S.C. § 636(a)(36)(A)(viii)(I). In addition, the PPP application states that the maximum PPP loan amount was to be determined by the borrower listing their average monthly "payroll" and multiplying it by 2.5—and the application instructions defined "payroll costs" for this calculation as including "compensation to employees . . . in the form of salary . . . ." *See, e.g.,* Ex. 12, ManPow's First PPP Loan Application. SBA regulations also made clear the relevant inquiry was whether the borrower had "payroll costs," and SBA defined that term as including employee salary. *See* 85 Fed. Reg. 20811, 20813 (April 15, 2020) (defining "payroll costs"); PPP FAQ 32 (April 24, 2020) (defining "payroll costs" as including "cash compensation paid to employees"). Thus, at the time Relators filed their complaint,

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

the law, PPP application, and every single piece of PPP guidance from SBA all made clear that the relevant inquiry was whether the borrower had "payroll costs" and that "payroll costs" included salaries paid to employees. Because relators had admitted in their complaint that ManPow: (a) had employees; (b), paid their salaries; and (c) had "employment costs," *see, e.g.,* Ex. 11, ¶¶3, 6, 25, 26, 27, 47, there is really no question that Relators knew at the time they filed their complaint that ManPow properly certified that it had "payroll costs."

As one can see from reviewing Relators' complaint, they never once use the term "payroll costs" and instead use a host of other terms to make their point. *See, e.g.,* Ex. 11, ¶¶38, 48, 53 (alleging ManPow "has *little or no employment costs*," has "*little or no actual employment expenses*" and did not have "*substantial employment costs*.") (emphasis added).  The verbal contortions Relators engaged in to avoid using the correct term "payroll costs" leaves only one reasonable conclusion—that Relators did so intentionally because they knew that ManPow had "payroll costs" as defined by the Congress and SBA. Only by ignoring this clearly defined term and never once writing it in their complaint could Relators hope to bring a *qui tam* suit accusing ManPow of fraud that could survive a Rule 12(b)(6) motion to dismiss.

What makes Relators' conduct even more egregious is that Relators' original complaint makes clear that Relators (or their counsel) were aware that PPP applications instructed borrowers to determine their maximum PPP eligibility by multiplying their average monthly payroll costs by 2.5—because Relators discuss this very calculation in paragraph 45 of the complaint! Yet instead of using the words "average monthly *payroll* costs" in paragraph 45 (which is what the PPP instructions tell borrowers to use), they appear to have deliberately changed it to "average monthly *employment* costs." *See* Ex. 11, ¶45 (emphasis added).

ManPow's motion to dismiss was denied by this Court because the Court did not wish to delve into the PPP regulations at that stage. Had Relators instead alleged that ManPow had no "payroll costs" within the meaning of the PPP, ManPow would

167247964v9

have simply pointed to that term's definition in 15 U.S.C. § 636(a)(36)(A)(viii)(I) and it would have been clear that Relators had failed to state a claim, without even needing to delve into PPP regulations. Instead, ManPow was forced to incur millions of dollars in legal fees to get to, and prevail at, summary judgment, when this case would have been dismissed at the Rule 12 stage but for Relators' deceptive misstatement of the actual PPP terminology.

Relators even conceded on multiple occasions to knowing the facts and PPP regulations that made their theory meritless. For example, Relators and their experts admitted that:

- The PPP's definition of "payroll costs" includes salaries and wages paid by an applicant. (Ex. 13, Miller Dep. Tr. at 41:9-12; Ex. 14, Khan Dep. Tr. at 111:18-112:3; Ex. 16, Relators' Responses to RFA No. 17).

- The terms "reimbursement" or "risk" do not appear in the definition of payroll costs. (Ex. 13, Miller Dep. Tr. at 42:1-6; Ex. 16, Relators' Responses to RFAs Nos. 15 and 16).

- ManPow paid the salaries of its employees. (Ex. 15, Bake Dep. Tr. at 20:8-16; Ex. 13, Miller Dep. Tr. at 57:8-11; Ex. 19, Relators' Responses to SUF, ¶¶5-7; Ex. 17, Hines Dep. Tr. at 74:12-21).

- ManPow was their employer. (Ex. 15, Bake Dep. Tr. at 30:20-31:24; Ex. 13, Miller Dep. Tr. at 48:1-14; Ex. 14, Khan Dep. Tr. at 15:8-19, 25:3-8).

The record is clear that at the time Relators filed their original complaint, they knew that ManPow had "payroll costs" within the meaning of the PPP and that there was no support in PPP regulations for any contrary finding, yet they brought this suit anyway. As the Court held in granting summary judgment, "consistent statutory and regulatory guidance *makes clear*" that "borrowers were meant to assess their *payroll costs* based on whether they had *paid* employees, rather than whether they actually had borne the costs of those expenses due to their business structure." Ex. 20, Order at 18 (emphasis added).

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Moreover, Ninth Circuit law is clear that FCA claims cannot be rooted in mere differences of opinion or interpretation, much less claims that have no legal basis whatsoever. *See, e.g.*, *U.S. ex rel. Lee v. Corinthian Colls.*, 655 F.3d 984, 996 (9th Cir. 2011) ("mere . . . differences in interpretations will not suffice to create liability" in an FCA case); *U.S. ex rel. Hopper v. Anton*, 91 F.3d 1261, 1267 (9th Cir. 1996) ("[D]ifferences in interpretations are not false certifications under the [False Claims] Act."); *Hagood v. Sonoma County Water Agency*, 81 F.3d 1465, 1478 (9th Cir. 1996) ("tak[ing] advantage of a disputed legal question" cannot form the basis of an FCA violation). Regardless of whether Relators intentionally avoided using the term "payroll costs" in their complaint, they still proceeded with a theory that ManPow lied to the government about having "actual employment expenses" when the law was crystal clear that ManPow had "payroll costs," thus their theory was, at best, a difference of interpretation of PPP eligibility that could not as a matter of law support an FCA claim. Their claim that ManPow committed fraud by telling the government that it had "actual employment expenses" was therefore not just entirely false and frivolous, but also deficient as a matter of law from the outset.

Relators' <u>second</u> "theory"—that ManPow incorrectly stated on its First Draw PPP loan application that it had 41 employees (a matter of public record that anyone could have found simply by conducting an internet search) was similarly frivolous. As their complaint shows, all Relators did was do some math and allege that 41 employees would have only supported a PPP loan of approximately $850,000, and thus could not have supported the approximately $1,400,000 ManPow applied for and obtained. *See* Ex. 11, ¶46. Notably, Relators never actually alleged that this was a violation of the FCA or that ManPow acted with scienter in listing 41 employees. *See id.* A simple review of the PPP application itself makes clear to anyone that the number of employees is *not* the determining factor for a PPP loan amount; rather, the average monthly payroll cost is what determines the size of the loan. And significantly, Relators never alleged that ManPow's listed average monthly payroll

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

cost was false—only that ManPow had no "actual employment expenses" and that 41 employees would not support a $1.4 million loan.

The record makes clear that Relators must have known all this because they admitted on multiple occasions that listing 41 employees would have only *hurt* ManPow's chances of obtaining the full loan to which it was entitled. For example, Relators admitted:

- It would make no logical sense for ManPow to list fewer employees on its PPP loan applications. (Ex. 13, Miller Dep. Tr. at 46:7-14; Ex. 14, Khan Dep. Tr. at 127:21-128:8.
- The amount of loan eligibility is unrelated to the number of employees stated on a PPP application. (Ex. 16, Relators' Response to RFA No. 35).
- This error would not put ManPow above the employee eligibility threshold of 500 employees. (Ex. 19, Relators' Response to SUF, ¶¶70, 74; Ex. 18, Castro Dep. Tr. at 285:19-25).

In short, there was never any dispute that 41 was a mistake, and that ManPow had the monthly payroll amount it listed, and the monthly payroll listed by ManPow supported the loan amount. Thus, any FCA claim based on listing 41 employees was necessarily immaterial, and in fact, Relators never even alleged it was material. Instead, they argued that materiality was not even an element, and thus ManPow could be liable for fraud simply by putting an incorrect number down. Their argument, which is completely wrong as a matter of law, was rejected by this Court and their claim found immaterial on its face "since it was not capable of influencing the SBA's payment of loan proceeds." Ex. 20, Order at 31:2-7.[4]

---

[4] The court only allowed this theory to survive ManPow's motion to dismiss because of Relators' other theory that "Defendant did not actually incur $2,800,000 in payroll expenses" based on Relators other theory that ManPow had no actual employment expenses. *See. e.g.,* Ex. 6, Order at 14:17-20. Of course, this was the theory the court later found to have no basis in the PPP regulations and guidelines.

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

The complete lack of any factual and legal basis for their allegations of fraud in the original complaint made the result the Court reached on summary judgment an obvious one and rendered Relators' allegations of fraud "wholly without merit." *Pfingston*, 284 F.3d at 1006. The controlling law and PPP regulations also demonstrated that Relators' theories were also "directly contrary and/or wholly unsupported by clear and controlling existing law." *See Kuroiwa v. Lingle*, 2008 WL 4056137, at *4 (D. Haw. Aug. 27, 2008) (assessing frivolity under Rule 11), *aff'd sub nom. Kuroiwa v. United States*, 351 Fed. App'x 238 (9th Cir. 2009). This alone is enough to satisfy the standard of frivolousness set forth in Section 3730(d)(4) and warrant an award of attorneys' fees.

### ii. Relators pled zero allegations regarding scienter.

Courts have also awarded § 3730(d)(4) fees where a relator's claims contain pervasive factual deficiencies like those in this case. A key element of any FCA claim is the presence of scienter. *U.S. ex rel. Campie v. Gilead Sciences, Inc.*, 862 F.3d 890, 899 (9th Cir. 2017). Relators did not make even one allegation regarding ManPow's state of mind when they brought their initial complaint. *See generally* Ex. 11, Compl. For this independent reason, Relators' claims had no chance of success and were thus clearly frivolous. *See, e.g., Mikes v. Straus,* 274 F.3d at 705; *Aventis Pharma*, 2017 WL 10543563 at *8; *U.S. ex rel. Vuyyuru v. Jadhav*, 555 F.3d 337, 356 (4th Cir. 2009).

### C.    Relators' Claims were Vexatious and Brought Primarily for the Purposes of Harassment

ManPow's attorneys' fees and expenses are also justified under the FCA because Relators' case was "clearly vexatious" and "brought primarily for purposes of harassment." *See* § 3730(d)(4). An action is "'clearly vexatious' or 'brought primarily for purposes of harassment' when the plaintiff pursues the litigation with an improper purpose, such as to annoy or embarrass the defendant." *Pfingston*, 284 F.3d at 1006 (citation omitted). Importantly, Section 3730(d)(4) does not require any

finding of subjective bad faith; an attorneys' fees award is proper when the plaintiff's case was "objectively vexatious." *Mikes*, 274 F.3d at 705.

The improper and vexatious purpose behind Relators' decision to bring this action is not only apparent from the utter lack of merit for bringing this lawsuit but also based on the relationship between the parties and Relators' own conduct here.

### i.    *The lawsuit was clearly frivolous.*

An improper purpose in filing a complaint can be inferred by the frivolousness of the complaint alone. *Townsend v. Holman Consulting Corp.*, 929 F.2d 1358, 1365 (9th Cir. 1990) ("A district court confronted with solid evidence of a pleading's frivolousness may in circumstances that warrant it infer that it was filed for an improper purpose."). Such an inference is appropriate here given the complete lack of merit for Relators to bring this lawsuit to begin with (as described above in section III.B) and the various other factors described in more detail below.

### ii.    *Relators did not have any direct or independent knowledge of the underlying facts nor were they traditional "insiders."*

From the very beginning of this case, one thing was very much apparent: Relators were not insiders or whistleblowers, nor did they have any direct or personal knowledge regarding any of their allegations, and attorneys' fees can be awarded on that basis.[5] *United States v. ITT Educ. Servs., Inc.*, 2012 WL 1028794, at *11 (S.D. Ind. March 26, 2012) (awarding fees where "[c]ommon sense suggests that [the relator] is worlds apart from the type of genuine whistleblower contemplated by the FCA"), *rev'd on other grounds,* 719 F.3d 818 (7th Cir. 2013).

All of the facts underlying Relators' original complaint were available in the public domain. Anyone could have done a simple Google search to find out that

---

[5] This is also evidenced by the fact that the original complaint did not identify any facts about the loans beyond what was publicly available. For example, Relators did not allege the precise average monthly payroll costs, alleging instead that in order to receive the loan amount of $1,400,610, "ManPow *necessarily* represented that it had average monthly employment costs of approximately $560,000, since $560,000 multiple [sic] by 2.5 equals $1,400,000." Ex. 11, Compl., ¶45 (emphasis added).

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

ManPow received $1,400,610 from each of its two PPP loans (which made it obvious that "ManPow necessarily represented that it had average monthly employment costs of approximately $560,000, since $560,000 multiple [sic] by 2.5 equals $1,400,000" as Relators alleged in their original complaint. Ex. 11, Compl., ¶45) and that ManPow listed 41 employees on its first PPP loan application.[6] Relators appear to have simply obtained their facts from public source information and then had their attorneys apply a made-up theory—ungrounded in any regulation or law—about what was considered "actual employment expenses" to bring this complaint against ManPow.

Relators admitted on multiple occasions that they did not have an understanding or personal knowledge regarding any of the allegations they originally alleged. *See* Ex. 14, Khan Dep. Tr. at 64:7-16, 75:1-11, 77:10-18, 78:23-79:10, 95:22-96:10 (unable to articulate the reason why the loans were allegedly fraudulent and conceding their attorneys were the ones who determined they were purportedly fraudulent); Ex. 13, Miller Dep. Tr. at 17:13-25 (unable to recall ever looking at any of ManPow's bank statements or P&Ls); Ex. 15, Bake Dep. Tr. at 58:7-59:13, 63:6-21 (admitting to having no independent knowledge regarding the ***factual*** allegations underlying their complaint outside of communications with their attorneys or the DOJ).

In fact, none of the Relators were able to recall even one conversation they had with one another about the facts of this lawsuit outside the presence of their attorneys. *See* Ex. 14, Khan Dep. Tr. at 35:2-11, 37:13-21 (asserting privilege for ***all*** conversations with other Relators because his "attorneys were present"); *see also* Ex. 15, Bake Dep. Tr. at 38:5-10; Ex. 13, Miller Dep. Tr. at 12:22-13:8. Relator Miller outright conceded that "[a]ll conversations [he] had regarding the complaint were with [his] attorneys or the DOJ present." *Id.*

---

[6] *See* https://projects.propublica.org/coronavirus/bailouts/loans/manpow-llc-4770877100 (listing loan amount, jobs reported, forgiveness status, and dates loan was approved and forgiven for ManPow's first PPP loan) (last visited Jan. 15, 2024).

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

Relators were only able to amend their complaint to make additional (and meritless) claims against ManPow based on facts that they admittedly learned only through discovery in this case. *See* Ex. 21, Relators' Br. in Support of Motion for Leave to File Amended Complaint at 3:24 ("Relators merely seek to add allegations which relate to the original Complaint and ***were already disclosed in discovery***, plus one allegation gleaned from the document production Defendant made."); Ex. 22, Relators' Br. in Support of Motion for Leave to File Second Amended Complaint at 5:23 ("On May 3, 2023, Relators first obtained the bank statements that form the basis for the requested amendment."); *See also* Ex. 14, Khan Dep. Tr. at 92:19-93:2 (admitting that "other additional false representations were—came to light as we litigated this—this matter").

> ### iii.  *Relators improperly brought this action for personal and business reasons.*

The extent of counsel's involvement in initiating this lawsuit and Relators' complete lack of knowledge regarding the allegations make it difficult to attribute this lawsuit to anything other than it being drawn up by Relators' attorneys. Relators are disgruntled former employees of ManPow who sought to use this lawsuit as a way to (a) retaliate against their former employer, (b) unfairly compete against ManPow by gaining access to sensitive trade secrets and other proprietary information under the guise of relevant discovery, and (c) tactically leverage this lawsuit in other state court litigation where Relators are currently being sued by ManPow for serious and improper conduct involving violations of California law and agreements.

Relators themselves furthered these goals by engaging in a smear campaign against ManPow. Following the filing of this lawsuit, Relators publicly posted news of this lawsuit on various social media platforms in an obvious ploy to publicly disparage ManPow and continue with their unfair competition. *See* Ex. 23, Social Media Posts. Relators' attorneys gave interviews to the press where their unfounded

theories and allegations against ManPow were pushed to the general public. *See* https://www.dailyjournal.com/articles/369096-relators-accuse-former-employer-of-pandemic-relief-fraud (last visited Jan. 15, 2024).

The timing of this lawsuit is no coincidence. Relators brought this *qui tam* complaint against ManPow after ManPow asserted counterclaims in state court for breach of confidentiality and employment agreements, theft of trade secrets, unfair competition and breaches of their fiduciary duties and loyalty. *See* Ex. 5, Cross-Complaint. This lawsuit was an obvious tactic to gain an unfair advantage in that litigation to both leverage a settlement in that case or access information outside the scope of discovery there. In fact, Relators argued in the state-court litigation that discovery was closed to stop ManPow from obtaining information relevant to its claims but then simply used discovery in this case to obtain the information that they still wanted to obtain from ManPow. *See* Ex. 25. When asked about the timing of this lawsuit during depositions, Relators refused to answer any questions. *See* Ex. 14, Khan Dep. Tr. at 30:10-24 (refusing to answer why the lawsuit was filed in July of 2021); Ex. 13, Miller Dep. Tr. at 19:23-21:1 (same).

Moreover, throughout this litigation, Relators continued to unfairly compete with ManPow in a way similar to that which gave rise to the claims underlying the state court litigation. First, Relators sought to obtain trade secrets and sensitive proprietary information from ManPow, a current and direct competitor of Relators under the guise of discovery. This included sensitive financial and vendor information in the form of confidential bank statements and P&Ls. *See* Ex. 8, M.O. at 6. For this reason, Relators forced ManPow to move *ex parte* for entry of a protective order providing for an AEO designation after Relators sought sensitive information trade secrets through discovery and refused to stipulate to such an order. *See* Ex. 7, ManPow's Application. Relators opposed ManPow's application without a legitimate basis. *See* Ex. 24, Relators Opp. Despite Relators' objections, the court found that the information requested in discovery contained proprietary and

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

confidential information and did not find any legitimate reason why Relators themselves needed to see this information. *See* Ex. 7, M.O.

Relators' smear campaign on social media to disparage ManPow and weaken their competition is further evidence of their improper motive. They publicly accused ManPow of committing "PPP loan fraud" and held themselves out as "pursuing" this lawsuit "on behalf of the United States" despite knowing that the Government did not necessarily agree with their claims or theories. *See* Ex. 23, Social Media Posts.

In one case very similar to circumstances here, the court awarded attorneys' fees to a prevailing defendant after concluding at summary judgment that the relator "filed this lawsuit as 'sour grapes' for [defendant's] successful state court action against him" and "because it afforded him the potential opportunity to gain access to [defendant's] current trade secrets." *Jacobs v. Lambda Research, Inc.*, 2014 WL 12654911, at *12 (S.D. Ohio June 16, 2014). The court found that "[w]hen the latter did not come to pass, he had no choice but to defend against defendants' motion for summary judgment, because a voluntary dismissal at that juncture would have been a virtual admission of the frivolity of his claims." *Id.*; *see also U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, 1992 WL 247587, at *8-9 (D.D.C. Sept. 15, 1992) (finding that "the underlying bases of the complaint were not only without merit" but relator has "done little more than dress up his personal grievance against the [defendant] as a qui tam [FCA] claim vindicating the interests of the U.S. government").

### iv.    *Relators were aware that the purportedly defrauded agency disagreed with their claims.*

Finally, Relators claimed to have been acting for noble causes by representing the Government's interests, but their actions show otherwise. Relators first ignored the purportedly defrauded agency's own views about their theories and later tried to silence the agency's sworn declarations to this affect. *See* Dkt. 166.

Other defendants have been awarded attorneys' fees under the FCA where, as here, the government was aware of and failed to object to the defendants' allegedly

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**
167247964v9

fraudulent acts. *See, e.g., U.S. ex rel. Minna Ree Winer Children's Class Trust v. Regions Bank of La.*, 1997 WL 119971, at *3 (5th Cir. March 13, 1997); *U.S. ex rel. J. Cooper & Assocs., Inc. v. Bernard Hodes*, 422 F.Supp.2d 225, 239 (D.D.C. 2006).

### D.    ManPow's Requested Attorney's Fees and Expenses are Reasonable

ManPow's requested fee award of $2,394,941.38 reflects ManPow's reasonable attorneys' fees and expenses from the date Relators' Complaint was unsealed on July 2, 2021 to January 3, 2024, the date this Court granted ManPow's motion for summary judgment in full. 31 U.S.C. § 3730 (d)(4).[7] These are fees ManPow never would have incurred had Relators not decided to file clearly frivolous claims for the primary purpose of harassment.

The stakes of this litigation could not have been higher for ManPow from a reputational standpoint. In publicly filed court documents, Relators accused ManPow of defrauding the United States by knowingly submitting false documents to the government to obtain PPP loans (and loan forgiveness) and baselessly attacked its business model and motives. From the outset, ManPow knew Relators were retaliating against them, were willing to make baseless claims, and would fight at every turn. Both the stakes of this case and Relators' conduct necessitated diligent advocacy from highly qualified counsel to prevail.

### i.    The Attorneys' Fees Sought Are Reasonable

A "reasonable fee award under a federal fee-shifting statute" is calculated by "multiplying the number of hours expended by the reasonable hourly rate." *Carter v. Caleb Brett LLC*, 757 F.3d 866, 868 (9th Cir. 2014) (citation omitted). The resulting

---

[7] While ManPow could reasonably seek recovery of all its costs, ManPow is excluding $163,111.90 from its request. This represents costs related to opposing a motion to quash filed by City National Bank, the former employer of one of Relators' experts, and a motion to compel filed by Relators that was granted in part (Dkt. 93).

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

"lodestar amount is presumptively the reasonable fee amount." *Van Gerwen v. Guarantee Mut. Life co.*, 214 F.3d 1041, 1045 (9th Cir. 2000).[8]

### 1. Troutman Pepper's Rates Are Reasonable

Reasonable rates under a fee-shifting statute are guided by the rates "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984). The relevant community here is the Central District of California, including Los Angeles. *Gonzalez v. City of Maywood*, 729 F.3d 1196, 1205 (9th Cir. 2013) (citation omitted).

As laid out more fully in the Lowe declaration, the hourly rates paid to Troutman Pepper were well within those that are paid for this quality of work in Los Angeles, especially given the "experience, skill, and reputation" of Troutman Pepper and of the specific attorneys involved in this case. Lowe Decl., ¶¶3-21; *see also Blum*, 465 U.S. at 895 n.11. Moreover, "evidence that an institutional client in a competitive legal market was willing to pay the rates charged without any guarantee of reimbursement is significant evidence that the rate was reasonable." *Perfect 10, Inc. v. Giganews, Inc*., 2015 WL 1746484, at *8 n.14 (C.D. Cal. Mar. 24, 2015) (J. Birotte), *aff'd*, 847 F.3d 657 (9th Cir. 2017); *see also Camacho v. Bridgeport Financial, Inc*., 523 F.3d 973, 980 (9th Cir. 2008) ("As we have noted, '[a]ffidavits of the plaintiffs' attorney[s] and other attorneys regarding prevailing fees in the community, and rate determinations in other cases . . . are satisfactory evidence of the prevailing market rate.'").

Troutman Pepper's rates also are in line with rates that have been held to be reasonable in prior cases in the Central District of California. *See Amphastar Pharm. Inc. v. Aventis Pharma SA*, 2020 WL 8680070, *25 (C.D. Cal 2020); *Perfect 10, Inc.*

---

[8] While presumptively reasonable, the lodestar may be "adjust[ed] upward or downward . . . in 'rare' and 'exceptional' cases[.]" *Van Gerwen*, 214 F.3d at 1045 (citing *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, (1986), supplemented, 483 U.S. 711 (1987)); *see id.* at 1045 n.2 (listing factors that can be considered to adjust the lodestar).

1    *v. Giganews, Inc.*, 2015 WL 1746484; *McKibben v. McMahon*, 2019 WL 1109683,

2    at *14 (C.D. Cal. Feb. 28, 2019).

3              **ii.      Troutman Pepper's Hours Are Reasonable**

4         Reasonable hours are determined by "considering whether, in light of the

5    circumstances, the time could reasonably have been billed to a private client."

6    *Moreno v. City of Sacramento*, 534 F. 3d 1106, 1111 (9th Cir. 2008). The Ninth

7    Circuit has directed courts to "[b]y and large … defer to the winning lawyer's

8    professional judgment as to how much time he was required to spend on the case;

9    after all, he won, and might not have, had he been more of a slacker." *Id*. at 112.

10         As detailed in the invoices submitted with the Lowe Declaration, the hours

11    Troutman Pepper billed in this case were spent on work that was "useful and of a

12    type ordinarily necessary to advance the litigation." *Pollinator Stewardship Council*

13    *v. U.S. Environmental Protection* Agency, 2017 WL 3096105, *10 (9th Cir. 2017)

14    (citing *Webb v. Board of Educ. Of Dyer County, Tenn*., 471 U.S. 234, 243-44 (1985));

15    *Moore v. Jas. H. Matthews & Co*., 682 F.2d 830, 839 (9th Cir. 1982) ("The standard

16    is whether a reasonable attorney would have believed the work to be reasonably

17    expended in pursuit of success at the point in time when the work was performed.").

18    This work included motions practice, extensive discovery where Relators improperly

19    sought ManPow's confidential business information, expert witness reports and

20    depositions, client depositions, third party discovery and, ultimately, summary

21    judgment briefing. Based on the foregoing, Troutman Pepper's hours are reasonable.

22              **iii.     ManPow Should Also Recover Its Expenses**

23         Under 31 U.S.C. 3730(d)(4), ManPow is entitled to recover expenses in

24    addition to attorney's fees and costs.[9] U.*S. ex rel. Lindenthal v. Gen. Dynamics Corp*.,

25    61 F.3d 1402, 1413 (9th Cir. 1995) (holding that "costs" and "expenses" are

26    "discrete" categories under the FCA). As the Supreme Court has explained, "taxable

27

28         [9] ManPow is filing a concurrent Application to Tax Costs and is not seeking double recovery of any line items.

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

costs are limited to relatively minor, incidental expenses" and represent only a "fraction of the nontaxable expenses borne by litigants for attorneys, experts, consultants, and investigators." *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 573 (2012); *see also Arlington Cent. Sch. Dist. Bd. Of Educ. v. Murphy*, 548 U.S. 291, 297 (2006). As detailed in the Lowe Declaration, ManPow is seeking recovery of expenses for expert fees,[10] travel, and other necessarily incurred costs. Lowe Decl., ¶¶19-20.

## IV.    **CONCLUSION**

For the foregoing reasons, ManPow respectfully requests that the Court grant this motion for attorneys' fees and expenses and order payment in the amount of $2,394,941.38.

Dated:        January 17, 2024                    TROUTMAN PEPPER HAMILTON SANDERS, LLP

By: /s/ Michael S. Lowe
MICHAEL S. LOWE

Attorneys for Defendant ManPow, LLC

---

[10] ManPow seeks $45,308.51 in expert fees. Lowe Decl., ¶20. Expert witness fees are regularly included as "reasonable expenses" in awards to successful Relators under 31 U.S.C. 3730(d)(1). *See, e.g., U.S. ex rel. Miller v. Bill Harbert Int'l Constr., Inc.*, 601 F. Supp. 2d 45, 59 (D.D.C. 2009), *vacated in part on other grounds*, 2011 WL 1833243 (D.C. Cir. May 12, 2011); *Graves v. Plaza Med. Ctrs., Corp.*, 2018 WL 3699325, at *12 (S.D. Fla. May 23, 2018); *U.S. ex rel. Garibaldi v. Orleans Parish Sch. Bd.*, 46 F. Supp. 2d 546, 567 (E.D. La. 1999), *vacated on other grounds*, 244 F.3d 486 (5th Cir. 2001).

**MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

## <u>CERTIFICATE OF COMPLIANCE</u>

The undersigned, counsel of record for ManPow, LLC, certifies that this Memorandum of Points and Authorities contains 6,994 words, which complies with the word limit of L.R. 11-6.1.

Dated:        January 17, 2024        TROUTMAN PEPPER HAMILTON
SANDERS, LLP

By: /s/ Michael S. Lowe
    MICHAEL S. LOWE

Attorneys for Defendant ManPow, LLC

---

**CERTIFICATE OF COMPLIANCE**

167247964v9