Michael S. Lowe (Bar No. 173664)
michael.lowe@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800

Callan G. Stein (admitted *pro hac vice*)
callan.stein@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110-2736
Telephone: 617.204.5103

[Defendant's Additional Counsel Listed on Next Page]

Attorneys for Defendant ManPow, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA *ex rel.* MATTHEW MILLER, DONALD K. BAKE, AND SAAD KHAN

Plaintiffs,

vs.

MANPOW, LLC,

Defendant.

Case No.: 2:21-cv-05418-VAP-ADS

The Honorable Virginia A. Phillips

**DEFENDANT MANPOW, LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEYS' FEES AND EXPENSES**

Date: February 26, 2024
Time: 11:00 a.m.
Place: Courtroom 6A

ADDITIONAL COUNSEL:

Avrohom C. Einhorn (admitted *pro hac vice*)
avrohom.einhorn@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: 215.981.4000

Kevin A. Crisp (Bar No. 261023)
kevin.crisp@haynesboone.com
HAYNES BOONE LLP
600 Anton Boulevard
Suite 700
Costa Mesa, CA 92626
Telephone: 949.202.3044

# TABLE OF CONTENTS

**Page**


**I.** INTRODUCTION ........ 1

**II.** LEGAL ARGUMENT ........ 2

- **A.** Relators' Original Complaint Was Clearly Frivolous ........ 2
- **B.** The Relevant Frivolousness Inquiry is the Original Complaint ........ 3
- **C.** Relators Do Not Contest that their "Economic Uncertainty" and "Omission of Affiliates" Theories are Clearly Frivolous ........ 5
- **D.** Relators' Filing of the Tentative Ruling is Improper ........ 6
- **E.** At a Minimum, ManPow is Entitled to Fees for Time Spent Defending Against Any Frivolous Theories ........ 6
- **F.** Relators' Claims were Clearly Vexatious and Harassing ........ 7
- **G.** ManPow's Attorney's Fees and Expenses are Reasonable ........ 8
- **H.** Relators' Objections to ManPow's Time Entries are Insufficient ........ 9

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Abselet v. All. Lending Grp., Inc.*,
2016 WL 9665251 (C.D. Cal. Mar. 15, 2016) .......... 8, 12

*Amphastar Pharms. Inc. v. Aventis Pharma SA*,
2017 WL 10543563 (C.D. Cal. Nov. 20, 2017) .......... 5

*Antuna v. Cnty. of Los Angeles*,
2016 WL 11743321 (C.D. Cal. Mar. 8, 2016) .......... 6

*Cabrales v. Cnty. of Los Angeles*,
935 F.2d 1050 (9th Cir. 1991) .......... 10

*Cognizant Tech. Sols. U.S. Corp. v. McAfee*,
2014 WL 3885868 (N.D. Cal. Aug. 7, 2014) .......... 11

*Gates v. Gomez*,
60 F.3d 525 (9th Cir. 1995) .......... 9

*In re Grand Jury Witness*,
695 F.2d 359 (9th Cir. 1982) .......... 10

*Greenpeace, Inc. v. Stewart*,
2020 WL 2465321 (9th Cir. May 12, 2020) .......... 10

*Hensley v. Eckerhart*,
461 U.S. 424 (1983) .......... 10

*U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*,
1992 WL 247587 (D.D.C. Sept. 15, 1992) .......... 7

*Hill Collections, Inc. v. Safeway, Inc.*,
2020 WL 2771234 (C.D. Cal. Mar. 3, 2020) .......... 6

*Jacobs v. Lambda Res., Inc.*,
2014 WL 12654911 (S.D. Ohio June 16, 2014) .......... 7

*Johnson v. Univ. College of the Univ. of Alabama*,
706 F.2d 1205 (11th Cir. 1983) .......... 11

*Kadiyan v. Medtronic*,
2012 WL 13005835 (C.D. Cal. Jan. 4, 2012) .......... 5

*Mattel, Inc. v. MGA Ent., Inc.*,
2011 WL 3420603 (C.D. Cal. Aug. 4, 2011) .......... 10

*Moreno v. City of Sacramento*,
534 F.3d 1106 (9th Cir. 2008) .......... 8, 12

*N.E. v. Hedges*,
391 F.3d 832 (6th Cir. 2004) .......... 3

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
722 F. Supp. 607 (N.D. Cal. 1989) .......... 3

*Perfect 10, Inc. v. Giganews, Inc.*,
2015 WL 1746484 (C.D. Cal. Mar. 24, 2015) .......... 8, 9

*Signature Fin., LLC v. McClung*,
2018 WL 6843050 (C.D. Cal. August 13, 2018) .......... 11

*Tutor-Saliba Corp. v. City of Hailey*,
452 F.3d 1055 (9th Cir. 2006) .......... 4, 5, 6

*United States v. $1,379,879.09 Seized from Bank of Am.*,
374 F. App'x 709 (9th Cir. 2010) .......... 10

**STATUTES**

42 U.S.C. § 1983 .......... 4

# I. INTRODUCTION

Relators seem proud of the fact that their attorneys spent 48% less time to lose this case than ManPow's attorneys spent to win it, and they argue that if this Court does award fees to ManPow, it should reduce the amount of the award. However, Relators' "manpower" devotion to this case is not the relevant metric. The time ManPow's attorneys devoted to winning this case was time well spent, in this hard-fought case brought by former employees (and direct competitors) who, prior to filing this case, were engaged in other litigation against ManPow involving their theft of trade secrets from and unfair competition against ManPow. Not only was ManPow's reputation on the line here, but it faced the prospect of treble damages (*i.e.* over $7,500,000), *plus* Relators' reasonable attorney's fees (which, depending upon their counsel's hourly rate, are likely well over $1 million), if it had lost. The consequence of losing this case more than justified the time ManPow's attorneys spent to win it.

For the most part, Relators have not challenged the reasonableness of ManPow's attorneys' hourly rate, nor have they objected to ManPow's expenses. They challenge only the total hours, yet that challenge should be rejected because Relators failed to timely comply with this Court's standing order that they lodge *specific* objections *on an item-by-item basis* to ManPow's time entries, *see* Standing Order at pp. 7-8, and instead lodged meritless general objections. It should also be rejected because even their late-filed objection chart consists almost entirely of their general objections to virtually every time entry simply incorporated into chart form and does not provide specifics or evidence to support their objections. *See* Dkt. 213.

There is no real dispute that at least some of Relators' theories of liability were frivolous. In their opposition, Relators do not deny that they knew prior to filing their original complaint that PPP eligibility depended upon the payment of "*payroll costs*"—a precise term specifically defined by Congress and listed on the PPP application. Nor do they deny that they intentionally avoided using this term in their complaint and instead used other phrases to hide the fact that ManPow's eligibility

for the program was obvious. In fact, Relators make no effort to deny that they knew prior to filing their complaint that ManPow indeed had "*payroll costs*" within the meaning of the PPP and that ManPow did in fact have the average monthly "*payroll costs*" it listed on its First Draw PPP application. Relators also do not deny that they knew that listing only 41 employees could not have resulted in a greater PPP loan than ManPow was entitled to. As such, Relators concede both that their two original theories were frivolous and that they knew so prior to filing their original complaint.

Because Relators' original complaint was clearly frivolous, whether or not Relators subsequently added non-frivolous theories via amended complaints is irrelevant. The relevant inquiry is what was filed at the inception of the case. The later addition of new theories, even if non-frivolous, does not protect Relators from liability for ManPow's fees. That is, even were the Court inclined to deduct for time spent defending against non-frivolous claims, ManPow is still entitled to recover its attorneys' fees incurred in defending against any frivolous claims. There can be no other conclusions but that: (a) the original *qui tam* complaint filed was frivolous; (b) the case was brought for improper purposes; (c) at least four of Relators' seven theories were clearly frivolous; and (d) ManPow's attorneys' fees are reasonable.

## II. <u>LEGAL ARGUMENT</u>

### A. Relators' Original Complaint Was Clearly Frivolous

Relators ultimately advanced seven separate theories of liability on their two claims. *See* Dkt. 199. However, Relators' original complaint contained just two theories, which the Court referred to as the "Payroll Costs" theory and the "False Number of Employees on First Draw PPP Loan Application" theory. *See id.* at 16, 29.; *see also* Dkt. 1. Both of these two original theories are clearly frivolous.

Despite ManPow spending several pages in its opening brief explaining how it appeared that Relators must have been aware that PPP eligibility was based on "*payroll costs*"—a defined term that Relators appear to have intentionally avoided using in their complaint, replacing it instead with terms of their own creation to

justify an allegation of fraud with no factual or legal support—Relators do not even attempt to deny any of this. Relators also do not deny that if they had used the proper term "*payroll costs*" in their original complaint it would have been clear to this Court that the complaint should be dismissed because "*payroll costs*" was the defined eligibility criterion and ManPow unquestionably had "*payroll costs*." Therefore, this Court should accept as true all of the above, which is not contested by Relators.

In addition, Relators do not even attempt to demonstrate that either of their original two theories are non-frivolous. That is, Relators do not specifically address why it was not frivolous to allege that ManPow defrauded the government by certifying that it had "substantial employment costs" when ManPow did *not* so certify but rather truthfully certified it had "*payroll costs*" as defined by the PPP. Nor do Relators specifically address why it was not frivolous to allege that ManPow defrauded the government by listing 41 employees when the loan amount was based not on the number of employees but rather the average monthly payroll, and Relators knew that ManPow had truthfully certified its average monthly payroll. As such, Relators do not contest that their original two theories were frivolous.

Instead of explaining why either of these theories was non-frivolous, Relators argue that they "were entitled to test these theories." Opp. 9. But that is not the law. Relators cannot "test" frivolous theories. *See, e.g., N.E. v. Hedges*, 391 F.3d 832 (6th Cir. 2004) (affirming attorneys' fees where the legal theory asserted had no "foundation" and "no chance of success"). Nor does Relators' use of the word "windfall" insulate their frivolous theories. *See* Opp. 3. A "windfall" is inherent in every FCA case, as the FCA was enacted to prevent "unscrupulous and corrupt government contractors" from obtaining a "windfall profit." *U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*, 722 F. Supp. 607, 609 (N.D. Cal. 1989).

**B. The Relevant Frivolousness Inquiry is the Original Complaint**

Knowing they cannot separately defend each of their seven theories of liability, Relators argue instead that frivolousness must be determined based on their "lawsuit"

as a whole, and that if they had *any* non-frivolous theories, even if added via amended complaint, they cannot be held liable for attorneys' fees. *See* Opp. 7-10. Relators thus seek to cast their seven theories as simply part of the same claim, and argue that if any part of that "claim" is non-frivolous, they cannot be liable for fees. *Id.*

Relators rely upon *Tutor-Saliba Corp. v. City of Hailey*, 452 F.3d 1055, 1061 (9th Cir. 2006), which they assert holds that "clearly frivolous claims lack merit from the beginning to the end of the litigation." Opp. 2. **Yet *Tutor-Saliba* says no such thing, and in fact states the *exact opposite*.** *Tutor-Saliba* held that "[i]n determining whether this standard has been met, a district court must assess the claim *at the time the complaint was filed*." *Tutor-Saliba*, 452 F.3d at 1060 (emphasis added). Thus, *Tutor-Saliba* does *not*, as Relators claim, stand for the proposition that a "legal claim" must be "frivolous from the beginning to the end of litigation in order to be found frivolous." Opp. 9. It also does not permit a plaintiff to avoid liability for attorneys' fees for frivolous theories by adding non-frivolous theories in an amended complaint.

In *Tutor-Saliba*, the plaintiff filed a civil rights complaint raising claims under 42 U.S.C. § 1983. *See Tutor-Saliba*, 452 F.3d at 1058. As the Ninth Circuit explained:

> The district court granted defendants summary judgment *on all claims* . . . [and] found that *all but two of the bases of Tutor's § 1983 claim were frivolous*; it therefore granted defendants' motion in part for fees and costs incurred in defending against Tutor's frivolous claims, while denying the motion with respect to fees and costs incurred in defending against Tutor's non-frivolous claims.

*Id.* (emphasis added). The Ninth Circuit affirmed the award of attorney's fees. *Id.*

*Tutor-Saliba* also expressly rejected the plaintiff's argument that a finding that some theories are non-frivolous precludes an award of attorney's fees:

> The fact that Tutor's claims arose from the same basic set of facts does not alter our assessment of the distinctive nature of his claims. Notably, the factual record was not complex and the parties did not dispute the material facts underlying Tutor's claims. The dispute centered on the legal conclusions that could be drawn from—the legal significance of—the undisputed facts.

*Id.* *See also Kadiyan v. Medtronic*, 2012 WL 13005835 at *9 (C.D. Cal. Jan. 4, 2012) (Morrow, J.) (awarding partial attorneys' fees even though "most" of plaintiff's claims were not frivolous, and "it may not be easy" to separate out the work performed defending against the frivolous from non-frivolous claims).

Judge Garbis's decision awarding attorney's fees in *Amphastar Pharms. Inc. v. Aventis Pharma SA*, 2017 WL 10543563 (C.D. Cal. Nov. 20, 2017), is also on point. As here, the FCA relator (Amphastar) was in competition with and engaged in ongoing litigation against the FCA defendant (Aventis). *See id.* at *3-4. As here, Amphastar filed an FCA complaint during the pendency of the other litigation, and asserted a claim that was "of questionable validity." *Id.* at *4. As here, the government declined to intervene. *Id.* As here, the district court ultimately dismissed Amphastar's FCA complaint. *Id.* at *5. Judge Garvis found the claim "*clearly had no reasonable chances of success*." *Id.* at *6 (emphasis added).

> The Court does not find Amphastar's claim frivolous because it did not prevail, but rather because, as the facts became known to the Court, it became clear that Amphastar *had no reasonable foundation on which to bring the suit*. The theory of the case may have been novel, but the Government may have decided to pursue it . . . . *Deciding to pursue a lawsuit without a credible foundation from the onset for doing so is clearly frivolous*.

*Id.* at *8 (emphasis added). The same holds true here.

### C. Relators Do Not Contest that their "Economic Uncertainty" and "Omission of Affiliates" Theories are Clearly Frivolous

Although Relators specifically defend three of seven theories and argue those three are not frivolous because this Court's tentative ruling initially contemplated allowing them to survive summary judgment, *see* Opp. 1, 8-9, they never specifically defend any of their other four theories (*i.e.*, their two original theories or those two theories that this Court referred to as the "economic uncertainty" theory and the "omissions of affiliates" theory, *see* Dkt. 199 at 20-23, 32-35). As demonstrated above, Relators' original two theories—the "payroll costs" and "number of

employees"—were clearly frivolous. In addition, as this Court's Order granting summary judgment makes clear, both the "economic uncertainty" and "omission of affiliates" theories were also clearly frivolous. Relators have failed to present any evidence or argument to the contrary. As such, at a minimum, this Court should find that at least four of Relators' seven theories of liability were clearly frivolous.

### D. Relators' Filing of the Tentative Ruling is Improper

The use of written tentative decisions in the Central District of California is common and it is understood by most parties that they are *not* to be relied upon nor cited or made part of the record. *See, e.g.*, *Hill Collections, Inc. v. Safeway, Inc.*, 2020 WL 2771234, at *1 (C.D. Cal. Mar. 3, 2020) (Fitzgerald, J.) (forbidding party from citing Court's tentative and warning "future motions based on a tentative decision will be stricken."); *Antuna v. Cnty. of Los Angeles*, 2016 WL 11743321, at *1 (C.D. Cal. Mar. 8, 2016) (Fitzgerald, J.) (refusing plaintiff's request that Court take judicial notice of Court's own tentative ruling on defendant's motion for summary judgment). Were district judges to be faced with having their tentatives cited by losing parties and attached to court filings (and thus made part of the record on appeal), it would have a chilling effect. Relators' reliance—indeed *heavy reliance*—upon a tentative order from this Court is not just bad form, it is improper. Further, it is irrelevant, as this Court's tentative ruling no more establishes that their theories were non-frivolous than would questions asked by the Court at the hearing on the motion.

### E. At a Minimum, ManPow is Entitled to Fees for Time Spent Defending Against Any Frivolous Theories

As *Tutor-Saliba* makes clear, even if the original complaint had contained any non-frivolous theories (which it did not), ManPow would still be entitled to fees for time spent defending against frivolous theories. As set forth in the Lowe Declaration, ManPow's counsel spent at most 6.5% of its time on the three theories Relators argue were non-frivolous. Thus, it would warrant at most a 6.5% reduction in the total attorney's fee award, reducing it by $150,841.33. *See* Lowe Decl. ¶¶ 22-26, 29.

### F. Relators' Claims were Clearly Vexatious and Harassing

Relators are *not* "whistleblowers." They are former employees who quit, opened a competing business, and as ManPow has alleged, misappropriated trade secrets.[1] They were (and still are) engaged in litigation against ManPow prior to filing their FCA complaint. Although Relators argue that the other litigation does not prove that they brought this suit for an improper purpose, Opp. 14, it is certainly evidence of that. *See, e.g.*, *Jacobs v. Lambda Res., Inc.*, 2014 WL 12654911, at *12 (S.D. Ohio June 16, 2014); *U.S. ex rel. Herbert v. Nat'l Acad. of Scis.*, 1992 WL 247587, at *8-9 (D.D.C. Sept. 15, 1992). Other evidence includes the frivolousness of the original complaint, changing the wording of PPP eligibility from "payroll costs," their lack of knowledge of a factual basis to bring this suit, their social media campaign disparaging ManPow,[2] and their refusal to stipulate to an AEO designation.

Relators argue that ManPow has failed to provide an example of them *using* information they learned from this case in the state court case, but there has not yet

---

[1] Relators point to a company-wide email referring to the PPP as "free money" as evidence that they are whistleblowers. Opp. 12. As a threshold matter, the statement that money is "free" does not establish either the presence of a false claim or that ManPow knowingly or intentionally lied to the government. In that very same email ManPow's CFO and General Counsel expressly states he "must ensure that we comply with all rules." *See* Ex. 1 to Davis Decl. Furthermore, "free money" was specifically included in quotations and was no different than how an untold number of pundits and articles characterized the PPP. *See, e.g.*, Christopher B. Branson, *The Paycheck Protection Program: Free Money for Small Businesses – What You Need to Know*, Murray Plumb & Murray, https://mpmlaw.com/the-paycheck-protection-program-free-money-for-small-businesses-what-you-need-to-know/ (last visited Feb. 7, 2024); Mark Pestronk, *As Close to Free Money as You Can Get*, Travel Weekly, https://www.travelweekly.com/Mark-Pestronk/As-close-to-free-money-as-you-can-get (last visited Feb. 7, 2024). Finally, this email was not something confidential that only Relators were privy to. As the email itself makes clear, it was sent to the *entire* GM group of New Western. *See* Ex. 1 to Davis Decl.

[2] Relators call their smear campaign against ManPow "silly" (Opp. 13) but it is anything but that. Exhibit 23 to Relators' actions went well beyond a "single social media posting" as they falsely assert. Pages 503 through 506 displays screenshots of a LinkedIn post by Relator Khan, with a follow up message. Pages 504-05 show that the message was reposted by both Relators Miller and Bake. Pages 501 and 507 show screenshots of a Facebook posting by Khan, along with follow up messages, while page 508 is a screenshot of a separate posting by Bake. Exhibit 23 shows that each of these postings received dozens of public reactions, comments, and reposts. Disparaging ManPow, their direct competitor, was hardly "silly."

been such an opportunity, as trial in that case has not occurred. Significantly, Relators do not dispute that discovery in the state case was closed when they tried to obtain ManPow's unredacted bank accounts and employment contracts with other employees and then objected to an AEO designation and objected to ManPow's *ex parte* application (which was ultimately granted by Magistrate Judge Spaeth). *See* Dkt. 104 at 5. That Relators brought this suit for an improper purpose to harass ManPow and attempt to obtain an advantage in their state court litigation is clear.

**G. ManPow's Attorney's Fees and Expenses are Reasonable**

Relators' counsel note with apparent pride that they spent "only" 1,778.90 hours of time on this case while ManPow "seeks to recover attorneys' fees based on 3,395.5 hours of attorney time billed." Dakak Decl. ¶ 6. But ManPow won, and Relators lost. Perhaps if ManPow's attorneys had spent "only" 1,778.90 hours ManPow might not have won. Regardless, the hours spent by the losing party is not the measuring stick. The Ninth Circuit has directed courts to "[b]y and large . . . defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case; after all, he won, and might not have, had he been more of a slacker." *Moreno v. City of Sacramento*, 534 F.3d 1106, 1111 (9th Cir. 2008).

Although Relators scoff at the amount of money ManPow spent to defend against their frivolous claims, "a fee award is not unreasonable simply because it involves a lot of money." *Perfect 10, Inc. v. Giganews, Inc*., 2015 WL 1746484, at *27 (C.D. Cal. Mar. 24, 2015) (Birotte, J.), *aff'd*, 847 F.3d 657 (9th Cir. 2017) (awarding attorney's fees of over $5 million in IP litigation). Instead, "the question is whether the rates charged and hours spent are reasonable in light of the totality of the litigation." *Id.*; *see also Abselet v. All. Lending Grp., Inc*., 2016 WL 9665251, at *3 (C.D. Cal. Mar. 15, 2016) (Walter, J.) (granting motion for attorney's fees in its entirety where "[t]he bulk of [the] opposition amounts to little more than noting that the requested fee award is large"). ManPow simply seeks to recover what it paid, and "evidence that an institutional client in a competitive legal market was willing to pay

the rates charged without any guarantee of reimbursement is significant evidence that the rate was reasonable." *Perfect 10*, 2015 WL 1746484 at *8 n.14.

Relators have only objected to the hourly rate of six attorneys who each spent a minimal amount of time on the case and two law clerks, on the ground that ManPow had failed to justify their rates. Opp. 22. In response, ManPow is including in the Lowe Decl. (filed concurrently herewith) an explanation of each of their backgrounds to support their hourly rates. Significantly, Relators did not challenge the rates of those attorneys that comprised the bulk of the time entries, and also have not objected to the expenses sought by ManPow, both of which should be found reasonable.

### H. Relators' Objections to ManPow's Time Entries are Insufficient

Relators' opposition to ManPow's fees motion violates this Court's Standing Order, which requires the opposing party to *timely* object in the form of a chart listing the specific time entry objected to, the requested reduction, objection, and reason for objection. Standing Order (Revised April 17, 2023) at 8 ("An opposing party ***shall*** specify its objections to the fee requests and time spent in the form set forth below…") (emphasis added). Relators did not *timely* object. Instead, they filed an opposition consisting of general objections, *see* Dkt. 212, and then filed an *untimely* objections chart five days late, just two days prior to when ManPow's Reply is due.[3] *See* Dkt. 213. However, neither Relators' general objections, nor their untimely chart are sufficient to meet their "burden of rebuttal that requires submission of evidence to the district court challenging the accuracy and reasonableness of the hours charged or the facts asserted by the prevailing party in its submitted affidavits." *Gates v. Gomez*, 60 F.3d 525, 535 (9th Cir. 1995), *as amended* (Aug. 3, 1995).

Relators' argument that ManPow was not permitted to redact *any* of its time entries is contrary to the law of this circuit, which has recognized that billing records submitted as part of a fee application can be redacted "to the extent absolutely

[3] This Court should strike Relators' untimely "Objections" chart. ManPow also reserves the right to file its own out of time response to their chart.

necessary to protect information covered by the attorney-client privilege or the work-product doctrine." *United States v. $1,379,879.09 Seized from Bank of Am.*, 374 F. App'x 709, 711 (9th Cir. 2010). ManPow redacted entries where it was needed to protect either the work product or attorney client privilege so as to avoid giving away litigation strategy that Relators could use in their ongoing state court litigation against ManPow or in their appeal in this case. Such redactions are certainly appropriate. *See, e.g.*, *Mattel, Inc. v. MGA Ent., Inc.*, 2011 WL 3420603, at *5 (C.D. Cal. Aug. 4, 2011) (Carter, J.), *aff'd sub nom.*, 705 F.3d 1108 (9th Cir. 2013) (denying request for unredacted legal bills where parties were engaged in ongoing litigation and granting motion would give "a one-way view into the litigation strategy of a party that it continues to battle with in other cases."); *see also In re Grand Jury Witness*, 695 F.2d 359, 362 (9th Cir. 1982) ("[B]ills, ledgers, statements, time records and the like which also reveal the nature of the services provided, such as researching particular areas of law, also should fall within the privilege."). Moreover, ManPow redacted billing entries for only 33% of its requested fees to protect privilege. *See* Lowe Decl. ¶ 20.

Relators argue that ManPow should not be able to recover fees for "unnecessary" work, which they define as any motions practice or other work that was "unsuccessful." Dkt. 21. This is not the standard. A prevailing party is "entitled to all attorney's fees reasonably expended . . . even though [they] may have suffered some adverse rulings." *Cabrales v. Cnty. of Los Angeles*, 935 F.2d 1050, 1052 (9th Cir. 1991); *Greenpeace, Inc. v. Stewart*, 2020 WL 2465321, at *8 (9th Cir. May 12, 2020) (affirming award of attorney's fees under EAJA where the "tasks that [the party seeking fees] undertook—attempting to supplement the record and moving to have the same panel decide this appeal—were reasonable, even if unsuccessful").

ManPow's time entries are not "vague," as ManPow need only "identify the general subject matter of [the] time expenditures" to meet its burden of establishing its fees are reasonable, as a "request for attorney's fees should not result in a second major litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433, 437 and n.12 (1983).

Relators' argument that ManPow overstaffed this case is also insufficient to meet its burden. Merely alleging that six attorneys "drafted" the motion for summary judgment does not establish that ManPow overstaffed it or engaged in needless work. *See* Opp. at 19. The summary judgment motion was *the* dispositive motion, requiring addressing numerous different legal theories. Moreover, as set forth in the Lowe Decl. filed concurrently herewith, each member of the litigation team had a different role in drafting parts of the motion and ancillary documents. Lowe Decl. ¶¶ 3-10. Similarly, objecting to billing for "meeting" or "strategizing" ignores the reality that such interaction plays an important role in the results obtained. The time ManPow's attorneys spent "strategizing," "analyzing," providing "attention to," and "finalizing" their work product obviously made the difference between a full dismissal with prejudice and a trial, and using such words to describe the work they did is not "vague." Making use of a large national law firm's resources, such as having numerous associates and partners who could work together on a matter by splitting up different components of that matter, far from reflecting overstaffing, actually reflects an efficient and effective approach to turn out quality work product to position the case for victory on summary judgment. *See, e.g., Johnson v. Univ. College of the Univ. of Alabama*, 706 F.2d 1205, 1208 (11th Cir. 1983) ("The use in involved litigation of a team of attorneys who divide up the work is common today for both plaintiff and defense work . . . [A] reduction is warranted only if the attorneys are *unreasonably* doing the *same* work. An award for time spent by two or more attorneys is proper as long as it reflects the distinct contribution of each lawyer to the case and the customary practice of multiple-lawyer litigation.").

Relators' citation to *Signature Fin., LLC v. McClung*, 2018 WL 6843050 (C.D. Cal. August 13, 2018) and *Cognizant Tech. Sols. U.S. Corp. v. McAfee*, 2014 WL 3885868 (N.D. Cal. Aug. 7, 2014) to support their arguments, does not establish anything beyond the general proposition that this Court can reduce a fees award for unnecessary work or vague billing, which is not present here. ManPow submitted

proof of the time it spent to defend this case. In opposition, Relators did not timely file specific objections, and their general objections are without merit. In fact, Relators have not provided any legitimate challenge to the hours ManPow's attorneys devoted to this case. Even their late-filed chart, which is nothing more than their general objections reduced to chart form, fails to provide this Court with a basis to reduce ManPow's fees. *Indeed, the deficiencies of the late-filed chart is evident from its conclusion that ManPow should have only spent 159.7 hours in total on this case*. It is clear their late-filed chart is little more than a wholesale objection to *all* of the time ManPow's attorneys spent, and it therefore should be rejected. *See* Lowe Decl. ¶¶ 17-18; *see also Moreno*, 534 F.3d at 1116 ("If opposing counsel cannot come up with specific reasons for reducing the fee request that the district court finds persuasive, it should normally grant the award in full, or with no more than a haircut."); *Schutza v. City of San Diego*, 756 F. App'x 768, 769-70 (9th Cir. 2019) (affirming award of attorneys' fees where "Defendants cited precedent only for the general proposition that excessive, redundant, or unnecessary fees should not be awarded, but failed to persuade the district court that the challenged entries qualified as such") (internal quotations omitted). *Abselet*, 2016 WL 9665251 at *3 (Judge Walter rejected arguments that were "largely the sort of 'generalized objections' that are insufficient" to satisfy opposing party's "burden of rebutting the reasonableness of the detailed billing records with specific objections and specific evidence."). Relators' general objections, and failure to offer evidence challenging either the accuracy or reasonableness of the hours, fail to meet their burden of rebuttal. *Gates*, 60 F.3d at 535. This Court should award ManPow its fees and expenses.

Dated: February 12, 2024

TROUTMAN PEPPER HAMILTON SANDERS, LLP

By: /s/ Michael S. Lowe
MICHAEL S. LOWE

Attorneys for Defendant ManPow, LLC

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for ManPow, LLC, certifies that this Memorandum of Points and Authorities contains 4,483 words, which complies with the word limit of L.R. 11-6.1.

Dated: February 12, 2024

TROUTMAN PEPPER HAMILTON SANDERS, LLP

By: /s/ Michael S. Lowe
MICHAEL S. LOWE

Attorneys for Defendant ManPow, LLC