Michael S. Lowe (Bar No. 173664)
michael.lowe@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
Two California Plaza
350 South Grand Avenue, Suite 3400
Los Angeles, CA 90071
Telephone: 213.928.9800

Callan G. Stein (admitted *pro hac vice*)
callan.stein@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
High Street Tower
125 High Street, 19th Floor
Boston, MA 02110-2736
Telephone: 617.204.5103

[Defendant's Additional Counsel Listed on Next Page]

Attorneys for Defendant ManPow, LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**WESTERN DIVISION**

UNITED STATES OF AMERICA *ex rel.* MATTHEW MILLER, DONALD K. BAKE, AND SAAD KHAN

Plaintiffs,

vs.

MANPOW, LLC,

Defendant.

Case No.: 2:21-cv-05418-VAP-ADS

Hon. Virginia A. Phillips

**DECLARATION OF MICHAEL S. LOWE IN SUPPORT OF DEFENDANT MANPOW, LLC'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**

[Concurrently filed with Reply Memorandum in Further Support of Defendant ManPow, LLC's Motion for Attorneys' Fees and Expenses]

ADDITIONAL COUNSEL:

Avrohom C. Einhorn (admitted *pro hac vice*)
avrohom.einhorn@troutman.com
TROUTMAN PEPPER HAMILTON SANDERS LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103-2799
Telephone: 215.981.4000

Kevin A. Crisp (Bar No. 261023)
kevin.crisp@haynesboone.com
HAYNES BOONE LLP
600 Anton Boulevard
Suite 700
Costa Mesa, CA 92626
Telephone: 949.202.3044

I, Michael S. Lowe, declare as follows:

1. I am an attorney licensed to practice law in California and admitted in the Central District of California. I am a Partner at the law firm of Troutman Pepper Hamilton Sanders LLP ("Troutman Pepper"), and counsel for Defendant ManPow, LLC ("ManPow") in this matter.

2. I submit this declaration in further support of ManPow's Motion for Attorneys' Fees and Expenses. I have personal knowledge of the facts stated in this declaration, and if called as a witness, would testify thereto.

3. In their Opposition to ManPow's Motion for Attorneys' Fees and Expenses (Dkt. 212), Relators argue that ManPow "aggressively overstaffed this case," specifically, that "six separate attorneys drafted Defendant's Motion for Summary Judgment." Opp., 18:25-19:3.

4. Each of the six attorneys who contributed to ManPow's successful motion for summary judgment—whose credentials and billing rates were fully set forth in my earlier declaration[1]—was a core member of the team on this matter and filled a necessary and distinct role in the preparation of ManPow's winning motion. They did not, of course, each draft a separate version of the entire motion, as Relators seem to imply. Associates Avrohom Einhorn, Christine MacGregor, and Zachary Epstein provided initial drafts of specific *pieces* of the final motion and related ancillary documents.

5. Mr. Einhorn wrote the first draft of ManPow's Memorandum of Law, which involved individual tasks like refining ManPow's arguments regarding the concept of the fungibility of money (Sept. 4, 2023; 3.2 hours) and the False Claims Act element of scienter (Sept. 5, 2023; 3.7 hours). He also wrote the first draft of ManPow's Reply Memorandum (Oct. 15, 2023; 4.4 hours). He spent approximately 111.0 hours in total and billed approximately $76,566.06 for all of his work in

[1] *See* Declaration of Michael S. Lowe in Support of ManPow's Motion for Attorneys' Fees and Expenses, Dkt. 205, January 17, 2024, at ¶¶ 6-13.

connection with ManPow's motion for summary judgment, as reflected in the billing records.

6. Ms. MacGregor wrote the first draft of ManPow's Statement of Uncontroverted Facts, which included individual tasks like selecting the precise Small Business Administration guidance on the Paycheck Protection Program that ManPow presented (Sept. 26, 2023; 1.1 hours; Sept. 27, 2023: 0.9 hours). Ms. MacGregor also analyzed the interplay between ManPow's motion for summary judgment and ManPow's two *Daubert* motions (for which she also wrote the initial drafts). She spent approximately 54.0 hours and billed approximately $39,861.79 for her work in connection with the preparation and filing of these ancillary documents and the research utilized in support of ManPow's motion for summary judgment, as reflected in the billing records.

7. Zachary Epstein wrote first drafts of the additional ancillary documents filed in support of ManPow's motion for summary judgment, including the Notice of Motion and Motion (Sept. 28, 2023; 1.3 hours), and the Declaration of Michael S. Lowe (Oct. 1, 2023; 1.1 hours). He also wrote the initial draft of ManPow's Opposition to Relators' Motion to Exclude and Strike the very SBA Declarations the Court found so critical to its disposition of this case. He spent approximately 54.8 hours and billed approximately $29,927.65 for his work on these ancillary documents in support of ManPow's motion for summary judgment, as reflected in the billing records.

8. Once the associates completed the initial drafts discussed above, I spent my time on revising them, rewriting the introduction and portions of the arguments section as necessary, organizing the arguments into an effective, cohesive order, and finalizing the brief into a final written product that I believed properly advanced our position. I similarly revised the ancillary documents that were filed in support of the Motion for Summary Judgment. By way of example, I revised ManPow's Memorandum of Law in Support of ManPow's Motion for Summary Judgment

(Sept. 25, 2023; 5.7 hours), revised ManPow's Statement of Uncontroverted Facts (Aug. 31, 2023; 3.0 hours), delivered strategic legal and factual analysis on critical issues like the elements of materiality and scienter (Nov. 21, 2023; 2.0 hours), and counseled the associates who provided drafts of ManPow's pleadings related to the Motion for Summary Judgment (as well as other pleadings filed by ManPow in this case) in order to guide their work to ensure that they were not duplicating effort but rather each providing a needed, unique part that would be incorporated into the larger whole. In total, I spent approximately 96.3 hours and billed approximately $98,223.76 for my work in connection with revising, supervising, organization, and otherwise completing ManPow's motion for summary judgment and ancillary documents, as set forth in the billing records.

9. Callan Stein also reviewed and revised drafts of each brief to provide further edits and input to me and to our associate team (Sept. 29, 2023; 7.5 hours; Oct. 1, 2023; 2.5 hours), as Mr. Stein was going to be arguing the motion and needed to have input into the final submission. Mr. Stein also argued on behalf of ManPow at the hearing for ManPow's Motion for Summary Judgment, which required extensive preparation (Oct. 20 and 24, 2023; 5.3 hours), as well as factual and legal analysis of both parties' briefing and all authority cited and discussed therein. Mr. Stein spent approximately 64.3 hours and billed approximately $61,415.49 for his work in connection with ManPow's motion for summary judgment, as set forth in the billing records. In fact, Mr. Stein's preparation for the summary judgment hearing proved crucial, as his oral advocacy at the hearing played a role in the eventual result, as this Court no doubt knows.

10. Kevin Crisp, who also represents ManPow in the California state court litigation between ManPow and Relators, served as ManPow's primary California point of contact, prepared for and attended the pretrial conferences with Relators' counsel that were held in the midst of summary judgment motion practice (Oct. 16, 2023; 3.1 hours), and also provided strategy and analysis regarding ManPow's

motion for summary judgment, which was important given its potential interplay with the ongoing California state court case. Mr. Crisp spent approximately 34.5 hours and billed approximately $29,760.00 for his work in connection with ManPow's Motion for Summary Judgment, as set forth in the billing records.

11. Although Relators have only really specifically addressed the Motion for Summary Judgment as an example of overstaffing and duplication of effort in their Opposition to ManPow's Motion for Attorney's Fees and Expenses, the division of labor described above in connection with the Motion for Summary Judgment is consistent with the approach we took for all other aspects of this case. Mr. Stein, Mr. Crisp, and I, as the partners running the case, made strategic decisions, sometimes with input from the associates based on the research they conducted at our request on various issues, and then we assigned discrete tasks to the associates to further the overall effort. We did not overstaff the matter or have associates duplicate work. Just because more than one associate worked on a given matter does not mean those two associates were handling the same aspect of the task at hand. The partners ensured that work was not duplicated, and instead was designed to advance to overall effort. Because we are a national law firm with many attorneys, both partners and associates, we can maximize the effectiveness of our team effort by dividing tasks into discrete projects, using our resources to address those discrete projects, and then combining the discrete projects into a larger whole. In my experience, this approach to litigation is both cost effective and effective in terms of results.

12. Mr. Stein, Mr. Crisp, and I are the three partners who worked most closely on this matter. However, there were three other Troutman Pepper partners who provided minimal assistance on discrete projects. Specifically, fellow partners Kristin Jones, Tracey Diamond, and William Taylor. Their credentials and billing rates are as follows:

a. Kristin Jones is a partner in Troutman Pepper's White Collar and Government Investigations practice group whose role was focused on preparing

ManPow's Motion to Dismiss (Dkt. 22), which was prior to my involvement in the case. Ms. Jones was selected to *Best Lawyers in America*: Criminal Defense: White Collar (2024) and *Chambers USA*: Litigation: White Collar Crime & Government Investigations, Pennsylvania (2021-2023). She graduated *magna cum laude* from the University of Wisconsin Law School, where she was a note and comment editor of the *Wisconsin Law Review* and inducted into the Order of the Coif. Ms. Jones spent approximately 8.9 total hours on this matter, and her standard billing rate was $985.08 per hour, as set forth in the billing records. After I joined the team, Ms. Jones did not perform any further work on this matter.

b. Tracey Diamond is a partner in Troutman Pepper's Labor and Employment practice group whose narrow role was focused on analyzing employment issues relevant to this case. Ms. Diamond was selected to *Best Lawyers in America*: Employment Law - Management (2021-2024) and Litigation - Labor and Employment (2018-2024). She graduated from Columbia Law School, where she was a Harlan Fiske Stone Scholar and articles editor of the *Columbia Journal of Law and Social Problems*, and was a law clerk to the Hon. Shirley Wohl Kram, U.S. District Court, Southern District of New York. Ms. Diamond spent approximately 0.6 hours on this matter, and her standard billing was $801 per hour, as set forth in the billing records.

c. William Taylor is a partner in Troutman Pepper's Business Litigation practice group whose role was focused on helping Mr. Stein prepare for the hearing on ManPow's Motion for Summary Judgment. Mr. Taylor's practice includes handling a wide range of complex business disputes for clients in a broad range of industries, and he was selected to *Boston Magazine*'s Top Lawyers List, Commercial Litigation (2023). He graduated from Temple University Beasley School of Law, where he was lead research editor of the *Temple Law Review*. Mr. Taylor spent approximately 8.9 hours on this matter, and his standard billing rate was $918 per hour, as set forth in the billing record. Mr. Stein and I believed it important

to have Mr. Stein face a moot of the hearing on the Motion for Summary Judgment from an experienced partner who had not been involved in the case and could approach the motion based just on the papers. As such, we asked Mr. Taylor to fill that role. I believe his assistance was of great benefit, and the results of Mr. Stein's performance at the hearing on the Motion for Summary Judgment reflect not only that he was well prepared for the hearing, but that his preparation made a difference.

13. The billing rates for *all* of the partners who worked on this matter were below the average rate for partners in the Los Angeles market among Troutman Pepper's peer firms, which is $1,164 per hour, according to Thomson Reuters' Financial Insights service. *See* Declaration of Michael S. Lowe in Support of Motion for Attorneys' Fees (Dkt. 205), ¶ 6.

14. As I stated in my earlier declaration, the rate of every associate who worked on this matter was *also* below the prevailing rate for associates among Troutman Pepper's peer firms in the Los Angeles market. *See* Dkt. 205, ¶¶ 5, 15.

15. In addition to Christine MacGregor, Avrohom Einhorn, and Zachary Epstein, whose billing rates and credentials are fully set forth in my earlier declaration, the following Troutman Pepper associates (who were each identified by name in Relators' Opposition to ManPow's Motion for Attorneys' Fees and Expenses, Dkt. 212, at 22:9) also worked on this matter. Their billing rates and credentials are as follows:

a. Angela Monaco is an associate in Troutman Pepper's White Collar and Government Investigations practice group. She graduated from the University of Pennsylvania Carey School of Law in 2020, where she was an editor of the *University of Pennsylvania Journal of Constitutional Law* and member of the Moot Court Board. Ms. Monaco assisted in drafting ManPow's jury instructions. She spent approximately 5.5 hours on this matter, and her standard billing rate was $603 per hour, as set forth in the billing records.

b. Isabela Palmieri is an associate in Troutman Pepper's White

Collar and Government Investigations practice group. She graduated in 2022 from the University of North Carolina School of Law, where she was a member of the *North Carolina Law Review*. Ms. Palmieri provided legal research and analysis for ManPow's motion for summary judgment and *Daubert* motions. She spent approximately 14.2 hours on this matter, and her standard billing rate was $531 per hour, as set forth in the billing records.

c. Amanda Sterling is an associate in Troutman Pepper's White Collar and Government Investigations practice group. She graduated *magna cum laude* in 2023 from Temple University Beasley School of Law, where she was the managing editor of the *Temple International and Comparative Law Journal*. Ms. Sterling analyzed and prepared ManPow's trial exhibits. She spent approximately 32.8 hours on this matter, and her standard billing rate was $531 per hour, as set forth in the billing records.

16. In addition to the attorneys discussed above, three non-attorney timekeepers contributed work to this matter at the direction of Troutman Pepper attorneys: Juli Stahl, a research librarian (5.9 hours at $279 per hour); Kristin Cuthbert, a case clerk (6.5 hours at $90 per hour); and Melanie Kersey, a 2023 summer associate and third-year law student at Temple University Beasley School of Law (4.7 hours at $387 per hour), as set forth in the billing records. The total amount billed to ManPow for these three timekeepers' work was approximately $4,050.00.

17. According to Relators' late-filed chart objecting to ManPow's attorneys' fees, Relators apparently believe that ManPow should have spent only 159.7 hours defending this case.

18. To arrive at that amount, ManPow took the total time from Relators' chart (3,414.4 hours) and subtracted the amount of time Relators contend ManPow's time should be reduced by (3,254.7 hours). In fact, a review of Relators' late-filed chart reveals that they objected to the entire amount of time for almost every single

time entry, and apparently believe that ManPow should have spent only 159.7 hours to defend this case. It is my belief that the time ManPow's attorneys spent on this case was reasonable and necessary to defend against the allegations raised by Relators, which had they proven successful could have resulted in an award of treble damages of over $7,500,000 as well as liability for Relators' attorneys' fees. Based on the fact that Relators' attorneys claim they spent "only" spent 1,778.90 hours on this case, without knowing their hourly rates, I would expect that their attorneys' fees would be well over $1 million for 1,778.90 hours. Therefore, I believe that ManPow faced a potential damages and fees award of over $8.5 million if it lost this case, as well as the reputational damage that necessarily goes with being found liable for defrauding the United States. The stakes for ManPow were certainly high, and it was important for us to provide them with a top-notch defense.

19. Relators further argue that ManPow "engaged in unjustified redactions that support denial of its motion." Opp., 21:10-11. What Relators characterize as "selective" redactions (Opp., 21:17) were legitimate protections of the attorney-client and attorney work product privileges, as described in ManPow's Memorandum of Law in Support of its Motion for Attorneys' Fees and concurrently filed Reply. *See* Reply at 10.

20. Moreover, a review of ManPow's attorneys' billing entries reflect that ManPow's redactions are to only a fraction of the total billing entries, and when the billed amounts of those redacted entries are added up, it totals only approximately 33 percent of its requested fees. That is, approximately 67 percent of ManPow's requested fees are supported by unredacted time entries, while only approximately 33 percent of ManPow's requested fees are supported by redacted time entries. It is m belief that these redactions are necessary to protect privileged information. In fact, we attempted to to be selective with our redactions to redact only those entries that we believed were necessary to protect the privileges described above and avoid providing Relators with an insight into ManPow's litigation strategy. Protecting this

from disclosure is important for three reason: (1) Relators have appealed this Court's grant of summary judgment in this case, and ManPow does not want Relators to gain any insight into its strategic decisions in this case as it could be used against ManPow in connection with Relators' appeal; (2) Relators are currently engaged in ongoing state court litigation against ManPow regarding unfair competition and theft of trade secrets claims. ManPow certainly cannot risk Relators utilizing any of ManPow's privileged information on the time entries to help it formulate strategy for the upcoming state court trial; and (3) Relators are direct competitors of ManPow who, ManPow alleges, stole trade secrets and are competing unfairly. Relators have also demonstrated that they were seeking access to ManPow's confidential business information when they sought and obtained ManPow's unredacted bank records and contracts with other employees and refused to designate such materials as Attorney's Eyes Only.

21. And, as stated in my earlier declaration, ManPow would be happy to provide copies of its fully unredacted invoices *in camera* at the Court's request. Relators did not object to this offer, nor have they demonstrated why this would be insufficient to assure the Court that ManPow actually spent the time it claims working on this case, if Relators truly believes that ManPow's redactions are evidence of some improper purpose.

22. Finally, Relators argue that because the Court held that three of their theories of liability—all based on the use of the specific PPP loan proceeds—satisfied the falsity element of the FCA, their entire case could not be "clearly frivolous" and no attorneys' fees can be awarded. *See* Opp., 12:2-20.

23. As this Court is aware, ManPow treated these three theories as really only one theory (although the Court disagreed with us on that point), and we defended against them by arguing they "collide[d] with the universal recognition that, legally, dollars are *fungible*." *See* ManPow's Memorandum of Law in Support of Motion for

Summary Judgment, Dkt. 175-1, at 22:1-2; *see also* Order Granting Summary Judgment, Dkt. 199 at 16 n.6 and 26-27.

24. Three billing entries provided at Exhibit 3 to ManPow's Motion for Attorneys' Fees were spent explicitly analyzing this precise issue (June 27, 2023: .3 hours and $164.70; Sept. 4, 2023: 2.3 hours and $2,190.41; and Nov. 8, 2023: .8 hours and $439.20). However, these amounts are not necessarily reflective of the total amount of time spent defending Relators' allegations based on those theories.

25. In attempting to utilize a holistic approach, we looking at the number of pages in ManPow's Memorandum of Law in Support of its Motion for Summary Judgment devoted to the issue of the fungibility of money (*i.e*, to seeking summary judgment on what this Court characterized as Relators' third, fourth, and fifth theories of liability, *see* Dkt. 199 at 24), which reveals that ManPow spent roughly 9 percent of that brief on this issue. Similarly, an examination of the transcript of the deposition of Relators' expert Wilfred Castro reveals that ManPow devoted approximately 4 percent of the deposition time to these theories through its questioning regarding the fungibility of money. This was largely the extent of ManPow's attorneys' time spent on the three theories Relators contend are non-frivolous. Thus, if we are conservative and average these two percentages—totaling 6.5 percent—Troutman Pepper attorneys spent at most approximately 6.5 percent of the total time it spent on the summary judgment motion and Castro deposition on the theories that Relators assert are non-frivolous.

26. I believe that reducing our fee award by 6.5 percent of all time entries relating to the Castro deposition and the Motion for Summary Judgment would be sufficient to realistically address any time we spent on these three issues. However, if we are even more conservative and estimate that we spent 6.5 percent of *all* of our hours in this case on defending against just these three theories of liability (all predicated on what ManPow believed to be the fungibility of money—which is how ManPow's counsel treated these three theories), and that therefore 6.5 percent of all

of the time ManPow's attorneys spent on this case was spent on these three theories, it still would amount to only $150,841.33 of the total attorneys' fees ManPow is seeking. That is, if this Court were to apply a 6.5 percent across-the-board reduction on the total amount of ManPow's fees on the assumption that ManPow devoted 6.5 percent of all its attorney time to defending against these three theories specifically, that reduction would total only $150,841.33.

27. As noted in my earlier declaration, the total time billed to ManPow in this matter is $2,487,797.79. *See* Dkt. 205 at ¶ 16. This is the amount ManPow paid. From this amount, we have already deducted from our fee request in our motion the $103,096.40 in fees ManPow paid its attorneys to prepare a subpoena to City National Bank (Mr. Castro's former employer) and defend against the bank's motion to quash and intervene to attend Mr. Castro's deposition. *See id.* at ¶ 17. We also already deducted from our fee request in our motion the $60,015.50 ManPow's attorneys spent to oppose Relators' motion to compel (Dkt. 93). *See* Dkt. 205 at ¶ 17. This results in a remaining total attorneys' fee request as set forth in our motion of $2,324.685.89.

28. However, because Relators have objected to an award fees for non-attorney time, ManPow has no objection to reducing this figure even further by the $4,050 billed by non-attorneys in this matter (*i.e.*, for the time spent by the librarian, the case clerk, and the summer associate referenced in paragraph 16 above). Therefore, after reducing the fee request by $4,050, ManPow seeks an attorneys' fees award of **$2,320,635.89**.

29. As ManPow has made clear in its reply brief, it believes the relevant frivolousness inquiry is the filing of the original complaint, which contained only two theories of liability, both of which were clearly frivolous. ManPow further believes that the addition of any non-frivolous theories later is irrelevant and should not reduce the fees award. ManPow further believes that there is no dispute that at least two of the other five theories of liability that Relators added via amended complaints are

also clearly frivolous. To the extent that this Court does find that the remaining three theories (referred to by this Court as Relators' third, fourth, and fifth theories of liability) were non-frivolous, and to the extent that this Court further finds it appropriate to reduce ManPow's fee award for time spent defending against these three theories, ManPow maintains in that instance it is entitled to its fees for defending against the other four frivolous theories. As set forth in paragraphs 25 and 26 above, ManPow believes that it could be said that *at most* it spent 6.5 percent of all attorney time defending against these three theories of liability, which would total a potential reduction of $150,841.33. Therefore, to do the math, if the Court agrees with this approach, that would result in a total attorneys' fees award of **$2,169,794.56**.

30. In addition to its attorneys' fees, ManPow is also entitled to its expenses. As noted in my previous declaration, ManPow incurred expert witness fees of **$45,308.51**. Dkt. 205 at ¶ 20. Relators have not objected to these expenses.

31. In total, ManPow also incurred **$24,936.98** in costs, both taxable and non-taxable, to defend against Relators' allegations, and it is entitled to this amount. Dkt. 205 at ¶ 19. ManPow seeks recovery of all of these costs to the extent they are not duplicative of those awarded in response to ManPow's Application to Tax Costs. Dkt. 203. Relators have not objected to these taxable costs.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed in Philadelphia, Pennsylvania, on February 12, 2024.

Dated: February 12, 2024

TROUTMAN PEPPER HAMILTON SANDERS, LLP

By: /s/Michael S. Lowe
Michael S. Lowe

Attorney for Defendant ManPow, LLC